Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| CCVA, INC.<br>Apelada<br><br>v.<br><br>ONE ALLIANCE INSURANCE CORPORATION<br>Apelante | TA2025AP00214 | *Apelación* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Civil Núm. SJ2018CV04322<br><br>Sobre: *Injunction* – Clásico, Seguros – Incumplimiento Aseguradoras Huracanes Irma/María |

Panel integrado por su presidenta, la Jueza Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de mayo de 2026.

Comparece One Alliance Insurance Corporation (One Alliance, aseguradora o apelante) mediante recurso de *Apelación*. Solicita que revoquemos una *Sentencia* dictada en su contra por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 30 de mayo de 2025. Mediante el referido dictamen, el foro primario declaró Ha Lugar la demanda instada por la apelada de epígrafe, ordenando a One Alliance pagar: $3,818,667.62 por daños sufridos a la propiedad; $300,000.00 en concepto de honorarios legales por temeridad, y; $2,516,142.72 por costas e interés legal.

Sin embargo, One Alliance nos conmina a revocar tal dictamen, afirmando que el foro apelado incidió al; imponer como sanción el no permitirle pasar cierta prueba pericial; carecer de prueba sobre ciertos daños alegados en la demanda, específicamente, aquellos relativos al techo de la propiedad asegurada, y; abusar de su discreción al imponerle temeridad, en un caso que ameritaba ser dilucidado a través del juicio en su fondo.

Adelantamos que la aseguradora no nos persuade sobre ninguno de los presuntos errores cometidos, Confirmamos.

**I. Resumen del tracto procesal**[1]

El 13 de junio de 2018, CCVA, Inc. (CCVA o apelada) —dueña y operadora del Centro Comercial Gran Caribe (Centro Comercial) — presentó una *Demanda* sobre sentencia declaratoria, interdicto preliminar y permanente (*injunction*), incumplimiento de contrato de seguro, y daños contra One Alliance.[2] En términos generales, alegó haber suscrito un contrato de seguro con One Alliance el 30 de junio de 2017, cuyo término de vigencia era de un año. Sostuvo que la aludida póliza de seguro cubría, entre otras cosas, posibles daños causados por eventos atmosféricos, como huracanes, a la estructura del Centro Comercial, por $47,000,000.00, y por pérdidas de ingresos ascendentes a $4,098,842.00. Afirmó que, tras el paso del huracán María, el Centro Comercial sufrió daños significativos en su estructura física, así como en el negocio en general. Señaló que los daños a la estructura física sobrepasaban los $11,000,000.00, y las pérdidas por ingresos dejados de devengar, $728,998.00.

Como parte de las referidas alegaciones, CCVA adujo que contrató una firma de ajustadores públicos, a los fines de realizar el procedimiento de reclamación ante la aseguradora, One Alliance. Añadió que, los ajustadores contratados presentaron una reclamación ante esta, mediante carta dirigida a su presidente el 6 de noviembre de 2017, de la cual nunca recibieron respuesta. Por esto, el 10 de enero de 2018, se comunicaron nuevamente con One Alliance para reiterar los cuantiosos daños, y sobre necesidad de comenzar las reparaciones a la mayor brevedad posible.

En la misma demanda fue afirmado que la aseguradora respondió a dicha comunicación, indicando que la reclamación presentada en noviembre de 2017 había sido recibida y se estaba investigando

---

[1] Hemos reproducido aquí, en lo pertinente, segmentos del recuento procesal según fue plasmado en el KLCE202400710.

[2] Entrada Núm. 1 de SUMAC.

diligentemente. Según CCVA, One Alliance sostuvo en la referida respuesta que, conforme al Artículo 27.162 (1) del Código de Seguros de Puerto Rico, *infra*, tenía noventa (90) días para investigar, ajustar y resolver la reclamación. Pero, contrario a ello, no fue sino hasta el 5 de marzo de 2018 que One Alliance pagó un adelanto de solamente $250,000.00. Ante lo cual, CCVA le imputó a la aseguradora la comisión de prácticas desleales en el ajuste de reclamaciones, con el propósito de presionarles a aceptar ofertas por debajo del verdadero valor.

En definitiva, CCVA solicitó como que se declarase que: 1) One Alliance había incurrido en violaciones sistemáticas y deliberadas al Código de Seguros de Puerto Rico, *infra*, y su Reglamento, en cuanto al manejo y procesamiento de reclamaciones sobre pérdidas materiales causadas por el huracán María; 2) se emitiese una orden de *Injunction* instruyendo a One Alliance a abstenerse de continuar incurriendo en las violaciones de ley aludidas; 3) fuera dictada sentencia a favor de CCVA y se ordenase a One Alliance a pagar por los daños sufridos, cubiertos bajo la póliza en cuestión; 4) fuera declarado que la aseguradora incurrió en incumplimiento de contrato; 5) se condenara a One Alliance al pago de pérdidas y daños sufridos; y 6) se determinara que esta obró temerariamente, en violación a los términos de la póliza de seguro.

En respuesta, el 13 de agosto de 2018, la aseguradora presentó su *Contestación a Demanda*, en la que, en suma, negó haber incurrido en las violaciones señaladas por CCVA.[3] Además, alegó que los daños reclamados por la apelada eran autoinfligidos, por lo que solicitó al TPI que: 1) determinase que cumplió tanto con las leyes y reglamentos aplicables, así como con la póliza de seguro; 2) se denegara la orden de *Injunction*; 3) determinase que la parte apelada presentó la *Demanda* de epígrafe a los fines de enriquecerse injustamente de la apelante; 4) concluyera que la parte

---

[3] Entrada Núm. 17 de SUMAC.

apelada tramitó el presente caso a sabiendas de su mala fe; y 5) razonara que CCVA incurrió en incuria o abuso del Derecho.

Superados varios incidentes procesales, el 10 de enero de 2019, el foro primario desestimó el *Injunction* preliminar, mediante *Sentencia Parcial*.[4]

Pasado un tiempo, el 7 de septiembre de 2021, el TPI dictó una *Resolución,* ordenándole a One Alliance emitir un pago inmediato de $715,738.60 a favor de CCVA, en concepto de la reclamación de la póliza.[5] Razonó que, por cuanto la aseguradora ya había reconocido cubierta bajo la póliza suscrita entre las partes, procedía, como mínimo, el pago de dicha suma.

En desacuerdo, One Alliance acudió a este foro intermedio solicitando la revocación de dicho dictamen interlocutorio, pero no fuimos persuadidos de intervenir.[6]

En consonancia, el 29 de julio de 2022, la parte apelada presentó una *Moción sobre Ejecución de Sentencia*.[7] No obstante, al día siguiente, One Alliance presentó *Moción Urgente en Oposición a Moción en Solicitud de Ejecución de Sentencia*.[8]

Sopesados los argumentos de las partes respecto a esta última controversia, el 4 de agosto de 2022, el TPI ordenó que la aseguradora consignara los $715,738.60 en favor de la parte apelada, en un término perentorio de siete (7) días.[9]

Luego, prosiguiendo con las incidencias previas al juicio, el 4 de agosto de 2022 fue celebrada vista evidenciaria para considerar una petición de aseguramiento de sentencia instada por el apelado. En lo que concierne, una vez One Alliance concluyó el interrogatorio directo al ingeniero Goyco,

---

[4] Entrada Núm. 45 de SUMAC.
[5] Entrada Núm. 116 de SUMAC.
[6] Caso Núm. KLCE202101306.
[7] Entrada Núm. 196 de SUMAC.
[8] Entrada Núm. 197 de SUMAC.
[9] Entrada Núm. 199 de SUMAC.

experto en techos, durante el turno de contrainterrogatorio surgió que dicho testigo había realizado un estudio infrarrojo de la estructura, que, según el apelado, no había formado parte de la documentación que descubierta. Entonces, solicitado por el apelado el descubrimiento de tal prueba, el 5 de agosto de 2022, el TPI ordenó a la aseguradora la entrega del referido estudio.[10]

Con todo, el 17 de agosto de 2022, CCVA incoó una *Moción para que se imp[usieran] las más severas sanciones, incluyendo la eliminación de las alegaciones por la deli[b]erada ocultación de evidencia.* Como fundamento para tal petición, aludió al episodio narrado en el párrafo que precede, y añadió que, como parte del descubrimiento de prueba, el 23 de julio de 2018, le había remitido a One Alliance un *Primer pliego de interrogatorios y requerimiento de producción de documentos,* solicitándole copia de los informe rendidos por cada uno de los peritos, y de cualquier investigación realizada, pero la aseguradora únicamente proveyó un informe preparado por el ingeniero Solís y un *Inspection Report* preparado por el ingeniero Goyco Graziani, con fecha del 26 de enero de 2018. Sobre el mismo asunto abundó que, en la respuesta de One Alliance al referido interrogatorio, no se mencionó la realización de algún estudio infrarrojo.

One Alliance se opuso a dicha solicitud mediante moción fundamentada. Aseveró que CCVA conocía del estudio infrarrojo desde la deposición que se le tomó al ingeniero Goyco el 20 de noviembre de 2020. También, sostuvo el dicho perito había testificado ante el foro primario que el estudio infrarrojo no era concluyente para establecer los daños. Al amparo de lo anterior, le solicitó al tribunal de instancia que desestimara la solicitud de sanciones por frívola y temeraria, y peticionó que se condenara a CCVA a pagarle las costas, los gastos interlocutorios y honorarios de abogado.

---

[10] Entradas Núm. 202 y 204 de SUMAC.

Por otra parte, CCVA solicitó al TPI que le autorizara a contratar un perito, para atender el informe infrarrojo que, sostuvo, no se le había descubierto de manera oportuna.[11] El foro primario accedió a la petición.[12]

En desacuerdo, el 22 de diciembre de 2022, la aseguradora presentó una *Moción Solicitando Eliminación de Perito,* esgrimiendo que el perito contratado por CCVA, el ingeniero Santiago, no preparó una opinión pericial en cuanto el estudio infrarrojo elaborado por su perito, el ingeniero Goyco[13], además que carecía de pericia en estudios infrarrojos.

Ripostó la apelada mediante *Oposición,* imputándole a One Alliance provocar la dilación de los procedimientos, a la vez que atendió los argumentos dirigidos en contra del ingeniero Santiago.[14]

Ante este escenario, el TPI emitió una *Resolución* declarando No Ha Lugar la *Moción Solicitando Eliminación de Perito* presentada por la aseguradora, aunque también razonó que CCVA debía hacer un *voire dire* al ingeniero Santiago, puesto que no surgía del expediente que sus calificaciones como perito hubiesen sido estipuladas.

Insatisfecho, One Alliance acudió una vez más ante nosotros, cuestionando la denegatoria a su moción para excluir al ingeniero Santiago. Sin embargo, desestimamos el recurso discrecional instado, por carecer de jurisdicción, al haber sido presentado de manera tardía.

Habiendo retornado el asunto al tribunal *a quo,* el 23 de enero de 2024, dicho foro realizó una inspección ocular en los predios del centro comercial, en la que estuvieron presentes ambas partes, representadas por sus respectivos abogados y peritos.[15] El señor Rafael Pérez Díez, en representación de CCVA, mostró a los participantes el estado actual del techo para que evaluaran los daños ocurridos.

---

[11] Entrada Núm. 237 de SUMAC.
[12] Entrada Núm. 251 de SUMAC.
[13] Entrada Núm. 257 de SUMAC.
[14] Entrada Núm. 258 de SUMAC.
[15] Entrada Núm. 323 de SUMAC.

Finalmente, **comenzó la celebración del juicio en su fondo**. Durante los días iniciales de vistas, el 14 y 15 de febrero de 2024, las partes estipularon la cuantía de $572,230.00, en concepto de pérdidas de ingresos de negocio.[16]

No obstante, el 20 de febrero de 2024, en la continuación de la vista en su fondo, **salió a relucir que One Alliance tenía un Informe Infrarrojo distinto al que le había suministrado a CCVA. Con mayor precisión, el referido informe fue revelado cuando en el turno de contrainterrogatorio seguido por CCVA en la persona del ingeniero Goyco, se hizo referencia a un párrafo específico del informe que sí había formado parte del descubrimiento de prueba, pero no coincidía con el presunto mismo informe que los abogados de One Alliance estaban utilizando en sala**. En virtud de ello, la representación legal de CCVA solicitó un receso para revisar ambos documentos. Luego de reanudarse los procedimientos, el Lcdo. Vicente González, abogado del apelado, arguyó que el informe que se le había remitido era distinto y contenía unas recomendaciones que no estaban en el informe en posesión de One Alliance. Sobre el mismo asunto planteó que el informe *ocultado* tenía la misma fecha que el Informe Infrarrojo a su disposición, pero no contenía el sello del ingeniero Goyco Graziani, y únicamente tenía la firma electrónica de este, de modo que parecía ser un borrador del Informe Infrarrojo. A tenor, le suplicó al foro primario que le otorgara un término para que su perito pudiese estudiar ambos informes, y le ordenase a One Alliance a presentar todos los correos electrónicos del Ing. Goyco Graziani que estuviesen relacionados con los informes en cuestión y los borradores que existieran sobre eso informes.

Por lo narrado, el TPI determinó que **la continuación del juicio en ese momento no era posible**, encontrándose una de las partes en

---

[16] Entrada Núm. 357 de SUMAC.

indefensión, ante lo cual emitió una *Resolución y Orden,* requiriéndole a One Alliance a descubrir lo siguiente:

> a. Todo correo electrónico del Ing. Juan Goyco Graziani dirigido a los abogados, las partes, los ajustadores, a la compañía y a otros ingenieros referente al informe o que, esté relacionado con el informe infrarrojo.
>
> b. Todo anejo que se incluya o se relacione a los correos electrónicos descubiertos.
>
> c. Todo borrador de informe preparado por el Ing. Goyco Graziani y/o sus empleados o asociados.
>
> d. Todo informe preparado por el Ing. Goyco Graziani y/o sus empleados o asociados.

En respuesta, el 22 de febrero de 2024, One Alliance presentó una *Moción en cumplimiento de orden del 20 de febrero de 2024*. Adjuntó a la referida moción una declaración jurada suscrita por el ingeniero Goyco Graziani el 23 de febrero de 2023, y los correos electrónicos relacionados al Informe Infrarrojo. En la aludida declaración jurada, Goyco Graziani declaró que existían dos (2) informes preparados por él, los cuales fueron adjuntados a la declaración jurada. Indicó que el informe marcado como *Anejo 1* fue preparado en el 2018, y el marcado como *Anejo 2* fue su informe final, preparado el 10 de agosto de 2022, y enviado al día siguiente.

Por otra parte, surge de los documentos que se adjuntaron a la referida moción que, el 4 de noviembre de 2020, el ingeniero Goyco Graziani al representante legal de One Alliance, y al ingeniero Solís, un correo electrónico con un documento adjunto intitulado "Caribe IR Surveyjgg 02-05-18.pdf". Posteriormente, el 10 de agosto de 2022, el ingeniero Goyco Graziani le envió a su hijo el documento antes indicado. Igualmente, el 11 de agosto de 2022, y el 22 de febrero de 2024, el referido ingeniero le envió un correo electrónico a la representación legal del apelante con dos documentos adjuntos, uno intitulado "Caribe IR Survey 02-05-18 JGG.pdf" y otro "CVA IR 02-05-2018 JGG.pdf."

El mismo día en el cual One Alliance incoó la anterior moción, presentó otra moción intitulada *Moción en cumplimiento de orden del 20 de*

*febrero de 2024 y en solicitud de orden.* En lo pertinente, sostuvo que CCVA conocía del estudio infrarrojo desde el 20 de noviembre de 2020, puesto que en esa fecha la referida parte depuso al ingeniero Goyco Graziani, y, en el transcurso de la deposición, salió a relucir la existencia del estudio. Arguyó que CCVA tuvo amplia oportunidad de preguntar en la deposición sobre el alcance del estudio infrarrojo, y no lo hizo. A esos efectos, sostuvo, en síntesis, que el alegado desconocimiento de CCVA sobre la existencia del estudio infrarrojo y su planteamiento de que el mismo había sido voluntariamente suprimido era temerario y con la intención de inducir a error al tribunal. Al amparo de lo expuesto, solicitó al tribunal de instancia que diera por cumplida la *Orden* del 20 de febrero de 2024, y ordenara a CCVA a cesar de su conducta dilatoria y temeraria. Nada expresó en cuanto a la revelación de dos (2) Informes Infrarrojos.

Ahora bien, One Alliance adjuntó a su escrito dos (2) Informes Infrarrojos con fecha del 5 de febrero de 2018, preparados por el ingeniero Goyco Graziani. Uno de los informes fue titulado *Infrared Survey, IR Survey performed*, y no contenía el sello del aludido ingeniero, únicamente una firma electrónica; mientras que el otro fue titulado *Infrared Survey, IR Survey performed: Atlantic Adjuster & Appraisers, Inc.*, y, a diferencia del primero, contenía la firma y el sello del Ing. Goyco Graziani. Por otra parte, adjuntó a la referida moción un correo electrónico con fecha del 12 de agosto de 2022, suscrito por el Lcdo. Mayol Bianchi, y enviado al Lcdo. Vicente González, representante legal de CCVA, en el cual le reenvió un correo electrónico que le había remitido el Ing. Goyco Graziani el 11 de agosto de 2022, el cual indicaba los siguiente: "Adjunto las fotos de IR y el reporte del CCVA". Además, incluyó a la aludida moción parte de una deposición tomada al Ing. Goyco Graziani, el 20 de noviembre de 2020, en la cual el referido ingeniero responde en afirmativo a la pregunta de si había realizado un estudio infrarrojo.

Examinado lo anterior, el 22 de febrero de 2024, el tribunal de instancia emitió una *Orden,* notificada al día siguiente, en la cual dispuso lo siguiente:

> Enterado, sin embargo para poder dar por cumplida la orden falta por certificar que se entregaron todos los borradores del informe preparado por el Ing. Goyco Graziani. Tenga hasta el 23 de febrero a las 5:00 pm para certificar que se entregaron todos los borradores de informe a la parte demandante.

En respuesta, el 23 de febrero de 2024, CCVA presentó una *Urgente solicitud de aplicación de orden.* En la misma, puntualizó que One Alliance omitió incluir a sus mociones en cumplimiento de orden copia de los anejos que formaron parte de los correos electrónicos adjuntados. De manera que, arguyó, a fines de constatar la veracidad de lo acontecido, era necesario que el tribunal le ordenara al Ing. Goyco Graziani producir copia de todos los documentos que acompañó a sus correos electrónicos y toda factura que hubiese sometido a One Alliance, directa o indirectamente, y que certificara que había sometido todos los correos electrónicos relacionados a su informe pericial, así como los anejos y/o cualquier documentación de apoyo a los referidos borradores.

A su vez, One Alliance instó una *Moción en cumplimiento de orden del 22 de febrero de 202*4, anejando una declaración jurada, suscrita por el ingeniero Goyco Graziani, con fecha del 23 de febrero de 2024, en la que este afirmó lo que sigue:

> [...].
>
> 3. Que mediante la presente declaración jurada declaro que existen solo dos informes preparados por mí. El informe preliminar que acompaño la presente declaración jurada y que se marca como **Anejo 1** fue preparado allá para el año 2018.
>
> 4. Que acompaño como **Anejo 2** mi informe final que preparé el 10 de agosto de 2022, y envié al día siguiente 11 de agosto do 2022 al Lcdo. Jaime Mayol Bianchi.
>
> [...].

A los pocos días, el 26 de febrero de 2024, One Alliance replicó a solicitud de ampliación de orden presentada por CCVA. En lo pertinente, sostuvo que la petición incoada por CCVA únicamente tenía la intención de

dilatar los procedimientos y de que se reactivara el descubrimiento de prueba, que había concluido en el 2022. Afirmó que **solo existía un (1) Informe Infrarrojo**, el cual el tribunal conocía desde la vista celebrada el 4 de agosto de 2022. Por otro lado, indicó que los anejos solicitados ya habían sido remitidos a CCVA mediante los correos electrónicos reseñados, por lo que no tenían que ser presentados.

Evaluado lo anterior, el 26 de febrero de 2024, el foro primario emitió una *Resolución* en la que resolvió, esencialmente, que One Alliance debía certificar que había entregado toda la información que tenía que ver con el informe infrarrojo del Ing. Goyco Graziani.

Luego, el foro primario emitió otra *Resolución* y *Orden,* resolviendo lo siguiente:

> **1. Se eliminan los informes infrarrojos (el preliminar y el final) así como el testimonio del Ing. Goyco Graziani en esta parte de los procedimientos (R 34. 3 (b)(2)).**
>
> **2. El Ing. Goyco Graziani queda excusado de comparecer a los señalamientos futuros (R. 34.3 (b)(2)).**
>
> **3. Así como que se da por probado el informe pericial de la parte demandante con relación a los daños del techo (R .34. 3 (b)(1).** (Énfasis provisto).

En esta última *Resolución,* el foro primario acentuó que se había ordenado a One Alliance a descubrir todo lo relacionado a los informes periciales en cuestión, sin embargo, este no había descubierto la totalidad de lo solicitado. Igualmente puntualizó que en la vista celebrada ese mismo día One Alliance no había explicado la razón por la cual no había incluido los anejos peticionados, ni certificado que no existieran. A tenor, expresó que el deber de descubrir prueba era continuo y no estaba condicionado a que esta fuera concluyente. A su vez, subrayó que era responsabilidad de la representación legal de las partes obedecer todo lo dispuesto en cuanto al descubrimiento de prueba, y que no quedaba en estos la elección de qué se descubría y qué no.

Tal dictamen del TPI fue objeto de la presentación de un recurso de *certiorari* por parte de la aseguradora, cuya expedición decidimos denegar[17].

Entonces, como adelantamos en el párrafo introductorio, habiendo concluido el juicio, el foro apelado emitió la *Sentencia* cuya revocación nos solicita la aseguradora, declarando Ha Lugar la *Demanda* instada por CCVA. En el contenido de la sentencia, el foro apelado enumeró ciento cuarenta y nueve *Determinaciones de Hechos*[18], para entonces concluir, entre otras, que One Alliance había sido informada de la reclamación presentada por la apelada tras el paso del Huracán María, lo que incluyó los daños y pérdidas sufridas, todas cubiertas por la póliza suscrita, pero no fue diligente con la reclamación y provocó la dilación del litigio. Aseveró, además, que la aseguradora había presentado valores alternativos de los daños que no eran creíbles, sino que los minimizó, exhibiendo contumacia al no descubrir prueba, litigando el caso de manera temeraria.

En definitiva, el TPI ordenó como remedio, que One Alliance pagara la cantidad de $3,818,667.62 en concepto de la reclamación a favor de CCVA. Además, le imputó temeridad a la apelante, por lo que también le requirió el pago de $300,000.00 en concepto de honorarios legales, más $2,516,142.72 de costas e interés legal, para un total de $6,634,810.34.

En desacuerdo, One Alliance presentó una oportuna moción de *Enmiendas a las Determinaciones de Hecho; Solicitud de Determinaciones de Hechos Adicionales; Conclusiones de Derecho y Reconsideración.*[19] CCVA presentó escrito en *Oposición.* El TPI denegó las peticiones de One Alliance.[20]

Es así como One Alliance acude ante nosotros mediante recurso de *Apelación,* imputándole al foro *a quo* la comisión de los siguientes errores:

**PRIMER ERROR:** Se excedió en su discreción el Tribunal de Primera Instancia al eliminar el testimonio de parte de la prueba pericial anunciada por la Parte Peticionaria durante el acto del Juicio en su Fondo, a pesar de haber recibido y admitido el mismo durante los

---

[17] KLCE202400710. Sépase que la presidenta de Panel en este caso, Hon. Lebrón Nieves, emitió voto disidente fundamentado.
[18] Entrada Núm. 453 de SUMAC.
[19] Entrada Núm. 459 de SUMAC.
[20] Entradas Núm. 460, 461 y 464 de SUMAC.

señalamientos celebrados al amparo de la Regla 56 de las de Procedimiento Civil de 2009.

**SEGUNDO ERROR:** Se excedió y abusó de su discreción el Tribunal de Primera Instancia al determinar cómo sanción al amparo de la Regla 34 de las de Procedimiento Civil de 2009 el considerar probado, sin pase de prueba, el segundo informe pericial presentado por la Parte Demandante durante la celebración del Juicio en su Fondo sin el mismo gozar de base científica alguna que lo avalara basado en una alegada expoliación de evidencia de la Parte Apelante.

**TERCER ERROR:** Abusó de discreción el Tribunal de Primera Instancia al declarar Con Lugar la demanda sin que existan hechos y prueba en el récord judicial demostrativos de lo determinado por el foro sentenciador, sobre todo en cuanto al aspecto de los daños alegadamente experimentados en la totalidad de los trece (13) techos de esta estructura.

**CUARTO ERROR:** Erró el TPI al determinar que la Parte Apelante incurrió en temeridad.[21]

Junto con dicho escrito, One Alliance instó una *Solicitud de Autorización para Presentar la Transcripción de la Prueba Oral Desfilada en la Vista en su Fondo como la Exposición Narrativa.*[22] De conformidad, emitimos *Resolución* disponiendo de los términos a qué atenerse las partes para acordar la transcripción de la prueba oral y presentar sus respectivos alegatos.

Habiendo cumplido las partes con lo ordenado, es decir, contando con el beneficio de los alegatos presentados por las partes, nos encontramos en posición de resolver.

**II. Exposición de Derecho**

a.

La industria de los seguros está revestida de un gran interés público debido a su importancia, complejidad y efecto en la economía y la sociedad. *Nevárez Agosto v. United Surety et al.,* 209 DPR 346, 358 (2022); *Consejo Titulares v. MAPFRE,* 208 DPR 716, 773 (2022). Por motivo de ello, esta industria es reglamentada extensamente mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el "Código de Seguros de Puerto Rico", 26 LPRA sec. 101 *et seq.*

---

[21] Entrada Núm. 1 de SUMAC-TA.
[22] Entrada Núm. 3 de SUMAC-TA.

Por su parte, el Art. 1.020 del Código de Seguros de Puerto Rico (Código de Seguros), 26 LPRA sec. 102, define el contrato de seguro como aquel "mediante el cual una persona se obliga a indemnizar a otra, o a pagarle, o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".

Sobre el contrato de seguros, el Tribunal Supremo ha expresado que:

[e]s un mecanismo para enfrentar la carga financiera que podría causar la ocurrencia de un evento específico.

Los aseguradores, mediante este contrato, asumen la carga económica de los riesgos transferidos a cambio de una prima. El contrato de seguros es, pues, un contrato voluntario mediante el cual, a cambio de una prima, el asegurador asume unos riesgos. La asunción de riesgos es, por lo tanto, uno de los elementos principales de este contrato. En resumen, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de ésta de responder por los daños económicos que sufra el asegurado en caso de ocurrir el evento específico. *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 721 (2003).

Cónsono con esto, la póliza configura el instrumento escrito donde quedan plasmados los términos que rigen el contrato de seguro. Art. 11.140 del Código de Seguros (26 LPRA sec. 1114(1)). En otras palabras, los términos estipulados en una póliza de seguro determinan los derechos y las obligaciones de las partes contratantes, y constituyen la ley que regirá entre ellas. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 989 (2023).

En lo relativo a los principios hermenéuticos aplicables, baste decir que corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1020 (2020). Por consiguiente, "al interpretarse la póliza, debe hacerse conforme a su propósito, o sea, ofrecer protección al asegurado". *Coop. Ahorro y Créd. Oriental v. S.L.G.*, *supra*, pág. 723. De modo que, "no se favorecerán interpretaciones sutiles que le permitan a la aseguradora evadir su responsabilidad". *Íd.* A tenor con tales principios, la labor de los tribunales consiste en buscar el sentido y significado que les daría una persona de normal inteligencia, que fuese a comprar la póliza, a las cláusulas en ésta contenidas. (Énfasis provisto). *Íd.*

De este modo se garantiza que el asegurado que adquiere una póliza reconoce el alcance de la protección del producto. *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1020. En aquellos casos en los que surjan dudas en torno a la interpretación de los términos de una póliza, éstas deben resolverse de manera que se cumpla con su designio intrínseco, es decir, proveer protección al asegurado. *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 898.

Como es de esperarse, "un seguro no responde por toda gestión imaginable del asegurado que pueda causar daño a terceros. La cubierta se circunscribe a determinadas actividades específicamente delimitadas en la póliza, juntamente con las exclusiones allí dispuestas, donde se exceptúan ciertas actividades por las que no viene obligado a indemnizar". *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 DPR 521, (1991).

Como norma general, las disposiciones de los contratos de seguros deben ser interpretadas liberalmente a favor del asegurado por constituir un contrato de adhesión. *Maderas Tratadas v. Sun Alliance et al., supra*, págs. 898-899; *Monteagudo Pérez v. E.L.A.*, 172 DPR 12, 21 (2007).

b.

i.

Es doctrina reiterada que el descubrimiento de prueba debe ser amplio y liberal. *Consejo de Titulares v. Triple-S Propiedad, Inc.*, 2025 TSPR 82; *Izquierdo II v. Cruz y otros,* 213 DPR 607, 616 (2024)*; Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 203 (2023). Los foros de primera instancia tienen amplia discreción para regular el proceso de descubrimiento de prueba, "pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes". *Consejo de Titulares v. Triple-S Propiedad, Inc.*, supra; *Rivera et al. v. Arcos Dorados et al., supra*, págs. 203-204.

En vista de lo anterior, los foros apelativos **no hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades**

**discrecionales**, excepto en aquellas situaciones en que se demuestre que este último[:] (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. (Énfasis suplido). *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846 (2023).

La Regla 23.1(a) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, establece los parámetros que regulan el descubrimiento de prueba en los casos civiles. En particular, el inciso (a) de esta Regla dispone que las partes en litigio podrán indagar "sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente [...]". *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 496 (2022).

En cuanto a los parámetros del descubrimiento de prueba en casos civiles, "[l]as partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente". Regla 23.1(a) de Procedimiento Civil de 2009 (32 LPRA Ap. V R. 23.1(a)). Además,

> una parte podrá hacer el descubrimiento de documentos y objetos que, antes del pleito o para el juicio, hayan sido preparados por o para otra parte, o por o para el o la representante de dicha parte, incluyendo a su abogado, abogada, consultor, consultora, fiador, fiadora, asegurador, aseguradora o agente. Regla 23.1(b) de Procedimiento Civil de 2009 (32 LPRA Ap. V R. 23.1(b)).

Por ello, "**tanto los borradores del informe pericial de un perito testigo, como las comunicaciones entre el perito testigo y el abogado con relación a tales informes, son descubribles bajo nuestra actual Regla 23 de Procedimiento Civil**". *McNeil Healthcare v. Mun. Las Piedras II*, 206 DPR 659, 693 (2021). (Énfasis provisto).

Según dispuesto en la precitada regla, las partes de un pleito tienen la obligación de preservar prueba sujeta al descubrimiento. 32 LPRA Ap. V R. 23.1(d). En otras palabras, una persona sujeta a un litigio presente o futuro debe conservar aquella evidencia que pueda ser utilizada en el desfile de prueba. "El deber de preservar evidencia material es parte del deber de producirla". *Pueblo v. Vélez Bonilla*, 189 DPR 705, 716 (2013). Asimismo,

[u]na parte que haya respondido a una solicitud de descubrimiento tiene el deber continuo de actualizar, corregir o enmendar sus respuestas y notificar a la parte contraria toda información adicional que obtenga con posterioridad a dicha solicitud y que esté relacionada con dicho descubrimiento, siempre que el tribunal se lo ordene [...]. Regla 23.1 (e) de Procedimiento Civil de 2009 (32 LPRA Ap. V R. 23.1(e)).

ii.

Nuestro ordenamiento jurídico favorece la política judicial de que los casos se ventilen en sus méritos. *Mercado Figueroa v. Mun. de San Juan*, 192 DPR 279, 288 (2017). No obstante, este principio debe mostrar sintonía con el propósito de que los pleitos se tramiten de forma justa, rápida y económica. *Íd.* En esta dirección, la Regla 23.1(e) de Procedimiento Civil dispone, en lo pertinente, que;

[e]l incumplimiento de la parte con su obligación de actualizar, corregir o enmendar **conlleva la exclusión en el juicio de la prueba no actualizada si surge que, antes del juicio, la parte tenía conocimiento o debió tenerlo de la información adicional o correctiva y no la actualizó, corrigió ni enmendó**. No obstante, de así interesarlo, la parte que solicitó dicho descubrimiento podrá hacer uso evidenciario de dicha prueba. Si el descubrimiento de la prueba surge durante el juicio, se proveerá el remedio que corresponda. 32 LPRA Ap. V, R. 23.1. (Énfasis provisto).

Respecto a la sanción de excluir del juicio el testimonio de un perito esencial, nuestro Tribunal Supremo ha advertido que es análoga a la medida extrema de la desestimación, por lo que sólo debe usarse en circunstancias excepcionales. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 206-207 (2023); *Valentín v. Mun. de Añasco*, 145 DPR 887, 895 (1998). Entre las circunstancias excepcionales a las que alude el mismo alto foro, se encuentran la conducta contumaz o de mala fe de la parte sancionada. *Valentín, v. Mun. de Añasco, supra*, pág. 895.

c.

La fase apelativa está caracterizada por la norma de deferencia judicial que mostramos al ejercicio de aquilatar credibilidad que efectúa el tribunal *a quo* al sopesar la prueba testifical. Esta norma arranca de la premisa de que es el foro primario el que está en mejor posición para evaluar y adjudicar la credibilidad de los testigos. *S.L.G. Rivera Carrasquillo v.*

*A.A.A.*, 177 DPR 341, 356 (2009). En efecto, es dicho foro el que tuvo la oportunidad de escuchar y ver declarar los testigos. *López v. Dr. Cañizares,* 163 DPR 119, 136 (2004). Después de todo, el "foro apelativo cuenta solamente con récords mudos e inexpresivos", de ahí el respeto a la adjudicación de credibilidad realizada por el foro primario. *SLG Rivera Carrasquillo v. AAA*, supra. Véase, además, *Trinidad v. Chade*, 153 DPR 280, 291 (2001); *Pérez Cruz v. Hosp. La Concepción,* 115 DPR 721, 728 (1984).

En consonancia, los foros apelativos no deben intervenir con la apreciación de la prueba realizada por el Tribunal de Primera Instancia, a menos que se demuestre que medió pasión, prejuicio, parcialidad o error manifiesto del foro primario. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750 (2013); *Rivera Menéndez v. Action Services*, 185 DPR 431, 444 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A., supra*; *Rodríguez v. Urban Brands,* 167 DPR 509, 522 (2006).

Para que un foro revisor revoque las determinaciones de hechos realizadas por el TPI, la parte que las cuestione deberá demostrar y fundamentar que medió pasión, prejuicio, parcialidad o error manifiesto por el juzgador. *S.L.G. Rivera Carrasquillo v. A.A.A., supra;* Véase, además, *Flores v. Soc. de Gananciales,* 146 DPR 45, 49 (1998). Se podrá intervenir con estas conclusiones cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba. *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

Esto quiere decir que un tribunal revisor podrá intervenir con la apreciación de la prueba cuando de un examen detenido de la misma quede convencido de que el juzgador descartó injustificadamente elementos probatorios importantes o que fundamentó su criterio únicamente en testimonios de escaso valor, o inherentemente improbables o increíbles. *C. Brewer P.R., Inc. v. Rodríguez,* 100 DPR 826, 830 (1972)*; Pueblo v. Luciano Arroyo,* 83 DPR 573, 581 (1961).

d.

Las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, se ocupan de reglamentar los requisitos, funciones y la presentación del testimonio pericial. La Regla 702 del mismo cuerpo reglamentario dispone, en lo pertinente, que:

> [c]uando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como perita —conforme a la Regla 703— podrá testificar en forma de opiniones o de otra manera [...] La admisibilidad del testimonio pericial será determinada por el Tribunal de conformidad con los factores enumerados en la Regla 403. Regla 702 de Evidencia (32 LPRA Ap. VI, R. 702).

En Puerto Rico la cualificación pericial es una determinación exclusiva del juzgador de acuerdo con la Regla 703 de Evidencia, 32 LPRA Ap. VI, R. 703. El profesor Ernesto L. Chiesa expone que el testimonio de un perito es admisible cuando el:

> [...] testigo tenga el conocimiento, destreza, experiencia, entrenamiento o educación formal en relación con la materia de modo que su testimonio sea de ayuda al juzgador. No se requiere grado académico ni publicaciones en el área particular de peritaje, aunque esto afecte el valor probatorio del testimonio pericial. [...] La jurisprudencia del Tribunal Supremo establece que la especialidad del perito se dirige, no a la calificación, sino al valor probatorio del testimonio pericial. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, 1ra. Ed., San Juan, Ediciones SITUM, 2016, págs. 243-244.

Nuestro tribunal de última instancia ha sostenido que la carencia de determinada especialidad afecta el peso de la prueba pericial, pero no la cualificación del perito. *Díaz v. Pneumatics & Hydraulics*, 169 DPR 273 (2006). El valor probatorio del perito está subordinado al análisis de determinados factores, por ejemplo; (1) las cualificaciones del perito, (2) la solidez de las bases de su testimonio, (3) la confiabilidad de la ciencia o técnica subyacente, y (4) la parcialidad del perito. *Íd.*, pág. 295.

El perito que es debidamente cualificado y declara en juicio, puede ser impugnado mediante "prueba sobre el valor probatorio del testimonio pericial". *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322 (2010), citando las Reglas 109 (E) y 703 (C) de Evidencia, 32 LPRA Ap. VI, R.109 (E), R.703 (C). El Tribunal Supremo ha expresado que la evaluación

adecuada del testimonio pericial puede realizarse a través del contrainterrogatorio, los argumentos de los abogados o abogadas de la parte contraria, y el testimonio de los demás peritos del caso. *S.L.G. Font Bardón v. Mini-Warehouse, supra,* págs. 345-346.

Nuestro Tribunal Supremo ha manifestado que el juez tiene amplia discreción con relación a la admisión o exclusión de la prueba pericial. De igual modo, ha expresado que dichas determinaciones deben ser sostenidas **a menos que sean claramente erróneas.** *S.L.G. Font Bardón v. Mini Warehouse, supra,* pág. 343. (Énfasis provisto). Sin embargo, es axioma judicial que ante la prueba pericial y documental el tribunal revisor se encuentra en igual posición que el foro recurrido. Es decir que, respecto a este tipo de prueba, el foro apelativo está facultado para realizar una apreciación apoyándose en su propio criterio. *Rebollo v. Yiyi Motors,* 161 DPR 69, 78 (2004); *Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R.,* 150 DPR 658, 662 (2000).

e.

Las Reglas de Procedimiento Civil establecen que en aquellos casos en donde una parte o su representación legal haya procedido con temeridad o frivolidad, el tribunal deberá imponer en la Sentencia el pago de una suma por concepto de honorarios de abogado que corresponda a tal conducta. Regla 44.1(d) de Procedimiento Civil (32 LPRA Ap. V, R.44.1 (d)). El Tribunal Supremo ha establecido que el concepto de temeridad se refiere a los actos de una parte que hacen necesario la tramitación de un pleito que se pudo evitar o que provocan una indebida prolongación. *C.O.P.R. v. S.P.U.,* 181 DPR 299 (2011); *Colón Santos v. Coop. Seg. Múlt. P.R.,* 173 DPR 170 (2008). Así mismo, nuestro más alto Foro ha indicado que "un litigante actúa con temeridad cuando con terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a otra parte innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes

en el pleito." *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010); *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843 (2008).

La imposición de honorarios de abogado se da como consecuencia de haber ocupado el tiempo de la administración de la justicia de forma innecesaria, por lo que su efecto es evitar esa práctica y resarcir a la víctima de un litigio temerario o frívolo ante los gastos incurridos. *Montañez v. U.P.R.,* 156 DPR 395 (2000). Hernández Colón, Derecho Procesal Civil, San Juan, Ed. Lexis Nexis, 2017, sec. 4402. Para discernir cuál es la cuantía apropiada a imponer por la temeridad, el nuestro Tribunal Supremo ha identificado algunos criterios: la naturaleza del litigio; las cuestiones de derecho planteadas; la cuantía en controversia; el tiempo invertido; los esfuerzos; y la actividad profesional que hayan tenido que desplegarse junto con la habilidad y reputación de los abogados. En todo caso, el grado o intensidad de la conducta temeraria o frívola es el criterio o factor determinante y crítico. *Corpak, Art Printing v. Ramallo Brothers,* 125 DPR 724, 738 (1990).

A su vez, la concesión de honorarios de abogado a favor de una parte es una sanción adjudicativa que procura disuadir la temeridad en la atención de los pleitos en el foro judicial. La determinación del tribunal de instancia sobre si procede el pago de honorarios de abogado por temeridad es discrecional. *Asociación de Condóminos v. Trelles Reyes,* 120 DPR 574, 579 (1988). **Dicha determinación no será revisada por este Tribunal a menos que se haya cometido un abuso de discreción por parte del tribunal sentenciador**. *San Miguel Fertil. Corp. v. P.R. Drydock,* 94 DPR 424 (1967); *Montañez Cruz v. Metropolitan Cons. Corp.,* 87 DPR 38, 40 (1962). (Énfasis provisto). Los foros apelativos no debemos intervenir con el ejercicio de la discreción del foro primario, salvo que se demuestre que hubo un craso abuso de discreción; que el foro apelado actuó con perjuicio o parcialidad; que se equivocó al interpretar o aplicar cualquier norma de derecho procesal

o sustantivo o cuando la suma impuesta resulte excesiva. *P.R. Oil v Dayco*, 164 DPR 486, 511 (2005).

**III. Aplicación del Derecho a los hechos**

Mediante el primer señalamiento de error One Alliance afirma que el TPI le privó de utilizar prueba esencial durante la celebración del juicio, *sin justificación alguna en derecho*[23]. Este señalamiento refiere propiamente a la *Resolución* emitida por el TPI el 26 de febrero de 2024, a través de la cual se dispuso: la eliminación de los informes infrarrojos; no permitir el testimonio del ingeniero Goyco Graziany para dicha parte de los procesos; la aprobación del informe pericial de la parte apelada con relación a los daños del techo.

Valga adelantar que, muy al contrario de lo impulsado por el apelante, el tracto procesal revela sin dificultad, el TPI contó con sólidos fundamentos para excluir la prueba pericial aludida, de modo que no observamos la *falta de justificación* imputada.

Entonces, abordar este primer señalamiento de error pasa por reconocer que nuestra función revisora se limita a sopesar si la determinación que aquí se impugna reviste el *abuso de discreción* que nos habilitaría para revocarla. Respondemos en la negativa.

Haciendo nuevamente referencia al tracto procesal, no pasan por inadvertidos los reiterados escollos procesales atribuibles a la prueba documental material que One Alliance estaba llamada a descubrir de manera oportuna, es decir, durante el periodo de descubrimiento de prueba, pero que no descubrió. Llama también la atención que tales dificultades se reiteraran y giraran alrededor de un mismo asunto, los informes de infrarrojos sobre el techo, preparados por el perito de la parte apelante, ingeniero Goyco Graziany. Sobre esto, nos queda claro que, al menos desde la vista evidenciaria de 4 de agosto de 2022, en la que surgió una divergencia

---

[23] Recurso de apelación, pág. 10.

sobre documentación no descubierta, referente al estudio de infrarrojo realizado por dicho ingeniero, la parte apelante debió velar por evitar a toda costa reincidir en no descubrir materia pertinente relacionada a esta prueba pericial, particularmente antes de la celebración del juicio. Sin embargo, ya iniciado el juicio, una vez más el foro primario tuvo que interrumpir el desfile de la prueba para enfrentar otra controversia sobre el descubrimiento de prueba documental que, a todas luces, no fue efectuado a cabalidad por One Alliance, sobre el mismo tema del estudio infrarrojo. Aunque reiteremos, los informes divergentes, y la documentación general relativa al estudio de infrarrojo realizado por el ingeniero Goyco Graziany, qué duda cabe, debieron ser descubiertos en la etapa correspondiente a tal fin, no en medio de la celebración del juicio en su fondo.

Recalcando, en el recurso de apelación, ni en el expediente ante nuestra consideración, hemos encontrado dato alguno que sirva para justificar, o siquiera explicar, cómo en un caso cuyo proceso previo al juicio ha tardado años, la parte apelada tuviera que advenir en conocimiento de la diferencia entre los informes del ingeniero Goyco Graziany, en el medio del juicio mismo. No observamos controversia alguna en el hecho de que, en efecto, existiera la divergencia en el contenido de los referidos informes, (asunto no discutido en el recurso de apelación), y de que la parte apelante no se la reveló a la parte apelada hasta la celebración del juicio. Tampoco surte efecto persuasivo alguno en nosotros la reiterada pretensión de la parte apelante en indicar qué documentación acerca de dicho asunto era pertinente o no, al sugerir que la no descubierta no resultaba *útil* o *beneficiosa*[24], abrogándose así la facultad de determinar qué prueba documental descubrir y cuál retener. Sépase que, para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad

---

[24] Recurso de apelación, págs. 24-25.

razonable de relación con el asunto en controversia. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 845 (2023).

Como se comprenderá, ante tal situación no podemos concluir que el foro primario incidiera en el remedio provisto para enfrentar tal reiterada omisión, eliminando la documentación y el testimonio relativo a la materia no descubierta.

Al así decidir no ignoramos el razonamiento expuesto por nuestro Tribunal Supremo en *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, supra, estableciendo una analogía entre el efecto de la exclusión de un perito esencial, con la medida extrema de la desestimación. Sin embargo, las distinciones en la situación procesal-fáctica en dicha Opinión *vis a vis* la del caso ante nuestra consideración nos parecen que saltan a la vista. En la Opinión aludida el Tribunal Supremo resaltó que el TPI había descartado cierta prueba pericial material que la parte demandante se disponía a presentar, **a pesar de no haber concluido la etapa de descubrimiento de prueba**. Sin embargo, en el caso ante nuestra consideración hemos remachado que, ya habiendo concluido la etapa de descubrimiento de prueba, al menos en dos ocasiones posteriores surgió que la parte apelante había incumplido con producir documentación pericial, siendo una de dichas ocasiones durante el juicio mismo.

Lo descrito enlaza con la determinación sobre temeridad alcanzada por el tribunal *a quo*. Ello, en tanto no podemos atribuir abuso de discreción a la determinación sobre temeridad al resultar aparente la prolongación de distintas controversias que bien pudieron ser atendidas sin esperar al juicio en su fondo, a lo que se añade un proceso de descubrimiento de prueba no cabal, más bien reveladora de conducta contumaz, que culminó en la interrupción del juicio por causa de evidencia que debió ser descubierta por la aseguradora antes de llegar a tal etapa.

Los errores restantes tratan sobre la valoración de la prueba realizada por el foro primario. En cuanto a esto, One Alliance asevera que la parte

apelada no demostró los daños relativos al techo que alegó, al carecer de prueba pericial para ese propósito, particularmente porque el perito presentado, ingeniero E. Santiago, acusaba falta de experiencia y conocimiento sobre techos y estudios infrarrojos, para lo cual dedicó varios segmentos en su recurso de apelación y *Alegato*.

Respecto a ello, valga repetir que el valor probatorio que el juzgador de los hechos de a un perito está subordinado a varios factores, no solo a uno de estos, entre tales están las referidas cualificaciones. *Díaz v. Pneumatics & Hydraulics*, supra. Con todo, lo cierto es que la transcripción de la prueba oral revela que el ingeniero Santiago fue sujeto a un extenso *voir dire* acerca de sus cualificaciones como perito, concediendo el Tribunal amplia oportunidad a las partes para interrogarlo. Como resultado, el TPI decidió cualificar al referido testigo como perito ingeniero, con la facultad de interpretar los resultados del informe sobre infrarrojo, pero sin autorización para opinar sobre el funcionamiento de la máquina que tomó las muestras, o sobre cómo se debió haber llevado a cabo dicho proceso[25].

No detectamos, ni se nos ha persuadido, de que tal determinación inicial del TPI fuera *claramente errónea*, que es el estándar revisor al cual atenernos al ponderar el ejercicio discrecional de dicho foro con relación a la determinación sobre la cualificación pericial. Por tanto, en rigor, solo quedaría sopesar si la parte apelante logró superar la carga de demostrarnos que medió pasión, prejuicio, parcialidad o error manifiesto en la valoración de la prueba por el foro primario. Sin embargo, no encontramos elementos en el expediente, ni en los dos escritos del apelante ante este foro intermedio, que nos coloquen en la posición de subvertir el ejercicio de aquilatar la prueba documental y testifical que llevó a cabo el tribunal *a quo*. En efecto, CCVA pasó prueba sobre los daños que alegó en los techos

---

[25] Transcripción de la prueba oral, vista de 15 de febrero de 2024, pág. 122 (inicio del *voir dire*), a la pág. 160, que recoge la determinación del juzgador aludida. Valga aquí resaltar que durante directo el ingeniero Santiago respondió a preguntas específicamente sobre su experiencia examinando techos, no siendo impugnado al respecto durante el *voir dire*, pág. 122 *et seq* de la TPO.

a través del testimonio del ingeniero Santiago, cuya credibilidad fue aquilatada por el foro primario luego de permitir, una vez más, amplia oportunidad a la parte apelante interrogarlo, y sopesarlo frente a la prueba testifical que también desfiló One Alliance sobre el mismo asunto. A fin de cuentas, bien vale la pena recordar que "es al TPI a quien corresponde dirimir la prueba testifical cuando surgen conflictos de credibilidad en la prueba de cargo, estando dicho foro primario en mejor posición que el apelativo para efectuar tal ejercicio valorativo sobre la prueba conflictiva, que debe prevalecer". *Pueblo v. Maisonave,* 129 DPR 49 (1991)[26].

En definitiva, los errores señalados no fueron cometidos, Confirmamos.

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, *confirmamos* la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica su Secretaria. La Juez Lebrón Nieves disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[26] Aunque la Opinión citada surge en el contexto de un proceso criminal, y de ahí la alusión a los *testigos de cargo,* el principio invocado por el Tribunal Supremo opera de igual forma en el proceso civil, es decir, es el juez ante quien desfiló la prueba el que está en mejor posición para dirimir conflictos en la prueba.

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CCVA, INC.<br><br>Apelada<br><br><br>V.<br><br><br>ONE ALLIANCE INSURANCE CORPORATION<br><br>Apelante | TA2025AP00214 | *Apelación*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2018CV04322<br><br>Sobre:<br>Injunction – Clásico, Seguros, Incumplimiento Aseguradoras Huracanes Irma/María |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

## VOTO DISIDENTE DE LA JUEZ LEBRÓN NIEVES

En San Juan, Puerto Rico, a 26 de mayo de 2026.

El recurso ante nuestra consideración es secuela de un recurso previo[27], que como sabemos, la Mayoría del Panel, optó por denegar. A modo de repaso, en aquella ocasión, One Alliance Insurance Corp. (en adelante, parte apelante o One Alliance) nos solicitó que dejáramos sin efecto la *Resolución* emitida el 26 de febrero de 2024, y notificada al día siguiente mediante la cual el foro *a quo*, eliminó tanto el informe preliminar como el informe final rendido por el perito de la parte apelante, el Ingeniero Juan Goyco Graziani, así como su testimonio y excusó a dicho perito de comparecer a los señalamientos futuros. Subsiguientemente, dio por probado el informe pericial de CCVA, Inc. (en adelante, parte apelada o CCVA) con relación a los daños del techo reclamados.

En desacuerdo con lo dictaminado, la parte apelante interpuso ante el foro recurrido una reconsideración, la cual fue denegada mediante

---

[27] Véase, KLCE202400710.

*Resolución* emitida y notificada el 30 de mayo de 2024.[28] En la misma, el foro primario sostuvo la determinación previamente emitida.[29] Toda vez que, el recurso fue denegado en aquella ocasión, nuevamente nos enfrentamos a la misma controversia por no haber sido adjudicada en sus méritos.

Por los fundamentos que en adelante se exponen, esta Juez, considera que el dictamen del foro primario es *contrario a derecho*, por lo que, disiente del curso de acción tomado por la Mayoría del Panel.

**I**

Como sabemos, CCVA, Inc. incoó el 13 de junio de 2018, una *Demanda* sobre Sentencia Declaratoria, *Injunction* y daños en contra de One Alliance, mediante la cual reclamó daños a la estructura física del centro comercial en cuestión, alegadamente sufridos a consecuencia del Huracán María. Estimó los alegados daños en una suma mayor de $11,000,000.00 dólares, así como las pérdidas a su negocio, en exceso $728,998.00 dólares. Alegó, además que, para la fecha de la ocurrencia en cuestión, mantenía la póliza de seguro número 75-28-000001234-0 emitida a su favor por One Alliance, la cual cubría daños reclamados.

Conforme surge de las alegaciones de la *Demanda*, el 5 de marzo de 2018, la parte apelante, le envió a la parte apelada un *adelanto* de $250,000.00 dólares. Empero, ante el desacuerdo con la aludida suma, la parte apelada le solicitó al foro primario que emitiera una sentencia declaratoria, a los fines de establecer que la parte apelada tiene derecho a recibir el pago por las pérdidas reclamadas, y que la parte apelante incurrió en violaciones al Código de Seguros y en prácticas desleales en el ajuste de sus reclamaciones. Asimismo, solicitó al foro *a quo* que emitiera un remedio interdictal para que la parte apelante se abstuviera de incurrir en violaciones al Código de Seguros y su reglamento.

---

[28] Apéndice del recurso, a las págs. 164-165.
[29] *Íd.*

Por igual, le suplicó al foro primario que condenara a la parte apelante a pagarle, además de las cantidades reclamadas, la suma de $1,000,000.00 dólares, por los daños y gastos alegadamente sufridos al negarse esta última, a pagar las pérdidas sobrellevadas, más una suma en pago de las costas del litigio, intereses y honorarios de abogado.

Por su parte, One Alliance presentó su contestación a la demanda el 13 de agosto de 2018, en la que negó haber incurrido en violaciones al Código de Seguros. Alegó afirmativamente que, luego de recibir la reclamación formal por parte del ajustador público de CCVA, consultó a los expertos necesarios, entre estos, los ingenieros Goyco Graziani y Emilio J. Solís, con el propósito de ajustar y pagar los daños cubiertos por la póliza expedida y ocasionados por el huracán. Consecuentemente, el **19 de abril de 2018**, le cursó a CCVA una oferta detallada por la suma de $1,927,210.60 dólares, a la cual se le debía restar el deducible correspondiente a $961,472.00 dólares y el adelanto de $250,000.00 dólares, lo cual dejaba un total a pagar de $715,753.60 dólares. La parte apelante aseveró que la parte apelada presentó la acción del título con mala fe y con el propósito de enriquecerse injustamente.

Conforme surge del tracto procesal del caso, la parte apelante desde su comparecencia inicial, incorporó como defensas afirmativas, los aludidos informes de los ingenieros previamente mencionados, y arguyó que, surgía de los mismos que los daños sufridos en el techo de la estructura se debían principalmente a su antigüedad y a la falta de mantenimiento, por lo que eran pocos los daños que se le podían atribuir al Huracán María.

Como parte del descubrimiento de prueba, en noviembre de 2020, la parte apelada le tomó deposición al ingeniero Goyco Graziani, en la que tuvo la oportunidad de indagar sobre todos los aspectos de su informe pericial. No surge de los autos que la parte apelada haya levantado alguna objeción al informe pericial rendido por el ingeniero Goyco ni antes ni durante la conferencia con antelación al juicio, celebrada el 22 de noviembre de 2022.

Por el contrario, el aludido informe pericial rendido desde el 26 de enero de 2018, fue admitido en evidencia por el foro primario durante la Vista al amparo de la Regla 56 de Procedimiento Civil[30] pautada para los días 24, 31 de mayo y 2, 3 y 4 de agosto de 2022. Resulta menester destacar que, durante la continuación de la *Vista* sobre aseguramiento de sentencia, celebrada el 4 de agosto de 2022, fue llamado a testificar el Ing. Goyco Graziani, como experto en techos. Antes de reanudarse los procedimientos, el licenciado Mayol y el licenciado Vicente estuvieron de acuerdo en estipular el Curriculum Vitae del Ing. Juan Goyco Graziani y marcarlo como Exhibit, por lo que, se marcaría como el Exhibit 3 de la parte demandada.[31]

Durante el contrainterrogatorio al ingeniero Goyco, salió a relucir que este hizo un estudio de infrarrojo en la estructura, el cual no surgía del Informe. La parte apelada solicitó que se le suministraran las fotos que tomó el perito del estudio infrarrojo, por ser parte del descubrimiento de prueba que se hizo y que se le concediera un término final de diez días para la producción de ese informe con todas las fotografías. El Tribunal accedió a lo solicitado, por lo que, el 5 de agosto de 2022, notificó Orden en la que dispuso:

> Según atendido en corte abierta, se ordena a la parte demandada entregar a la parte demandante como parte del descubrimiento de prueba, el estudio de infrarrojo que realizara el Ing. Goyco, tenga 10 días.

El 17 de agosto de 2022, la parte apelada interpuso *Moción para que se imp[usieran] las más severas sanciones, incluyendo la eliminación de las alegaciones por la deli[b]erada ocultación de evidencia.* Alegó, en esencia, que 12 de agosto de 2022, mediante correo electrónico, el Lcdo. Mayol Bianchi, representante legal de la parte apelante, le remitió un documento intitulado "*Infrared Survey Report*" con fecha del 5 de febrero de 2018, preparado por el Ing. Goyco Graziani. A pesar de que el consabido descubrimiento de prueba *se hizo dentro del término provisto por el foro*

---

[30] 32 LPRA Ap. V, R. 56.
[31] Véase Minuta del 4 de agosto de 2022, transcrita el día siguiente.

*primario*, la parte apelada arguyó que, la parte apelante se reservó intencionalmente la divulgación del referido informe. La parte apelada aludió a que, como parte del descubrimiento de prueba, el 23 de julio de 2018, le remitió a la parte apelante un *Primer pliego de interrogatorios y requerimiento de producción de documentos* en el que le solicitó copia de los informes rendidos por cada uno de los peritos y copia de cualquier investigación realizada. Adujo que, la parte apelante únicamente proveyó un informe preparado por el Ing. Solís y un *Inspection Report* preparado por el Ing. Goyco Graziani con fecha del 26 de enero de 2018 sin mencionar la realización de un estudio infrarrojo. Le imputó a la parte apelante ocultar evidencia y le solicitó al tribunal *a quo* que sancionara a esta con la eliminación de sus alegaciones; o, en la alternativa, que excluyera del juicio el testimonio del Ing. Solís y el Ing. Goyco Graziani.[32]

En respuesta, la parte apelante presentó el 31 de agosto de 2022, *Moción en oposición, réplica y solicitud*, en la que expuso que *la parte apelada conocía del estudio infrarrojo desde la deposición que se le tomó al Ing. Goyco Graziani* el **20 de noviembre de 2020**.[33] Además, arguyó que, si en ese momento se le hubiese solicitado a la parte apelada el referido informe, no se hubiera negado a proveérselo. A su vez, sostuvo que, el aludido ingeniero testificó ante el foro primario que el estudio infrarrojo no fue concluyente para establecer los daños. Consecuentemente, le solicitó al foro *a quo* que desestimara la solicitud de sanciones por frívola y temeraria,

---

[32] Para sustentar su petitorio anejó a su moción lo siguiente: Anejo 1: correo electrónico suscrito por el Lcdo. Mayol Bianchi el 12 de agosto de 2022, y remitido al Lcdo. Harold D. Vicente, represente legal de CCVA, mediante el cual le envió el informe infrarrojo; documento intitulado *Infrared Survey Report Performed for Atlantic Adjuster & Appraisers, Inc.*, preparado por el Ing. Goyco Graziani el 5 de febrero de 2018; Anejo 2: Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos, con fecha del 23 de julio de 2018; Anejo 3: Contestación de One Alliance al Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos, con fecha del 12 de octubre de 2018; Anejo 4: Informe del Ing. Solís, con fecha del 13 de abril de 2018; Anjeo 5: Correos electrónicos intercambiados entre el señor Orlando Rivera y el Ing. Solís, con fecha del 18 de enero de 2018; Anejo 6: Correos electrónicos entre Atlantic Adjuster & Appraisers y el señor Orlando Rivera, con fecha del 19 de junio de 2018, mediante los cuales se le remitió al señor Rivera el Informe preparado por Claims Auditors, LLC, con fecha del 19 de julio de 2018; Anejo 7: Conclusiones realizadas por el Ingeniero Pedro E. Díaz Sierra al evaluar el informe infrarrojo, con fecha del 17 de agosto de 2022.

[33] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 73-78.

y peticionó que se condenara a la parte apelada al pago las costas, los gastos interlocutorios y honorarios de abogado.

El 21 de octubre de 2022, la parte apelada replicó a la oposición presentada por la parte apelante en la que reconoció que, tenía conocimiento de que el Ing. Goyco Graziani había realizado un estudio infrarrojo. Arguyó que, dado a que nunca se le remitió un informe pericial sobre el referido estudio, entendía que no se había preparado un informe y negó el argumento de que no solicitó descubrir el aludido informe, puesto que se le había requerido a la parte apelante que entregara todos los informes realizados por los peritos.[34]

Luego de varias incidencias procesales, innecesarias pormenorizar, el *Juicio en su Fondo* se celebró durante los siguientes días: 14, 15, 20, 26, 27, 28 y 29 de febrero de 2024, 1 de marzo de 2024 y 10 y 11 de junio de 2024. Sin embargo, el caso no quedó sometido hasta el 20 de marzo de 2025, luego de que el foro primario recibió el mandato del Tribunal Supremo.[35]

Mientras se ventilaba el juicio en su fondo, el **20 de febrero de 2024**, surgió una controversia con relación al informe de infrarrojo preparado por el Ing. Juan Goyco Graziani,[36] razón por la cual, el foro primario emitió *Resolución y Orden* que debía ser cumplida en su totalidad **en o antes del 22 de febrero de 2024**. A petición de la parte apelada, el foro *a quo* ordenó a la parte apelante y al Ing. Juan Goyco Graziani, un extenso descubrimiento de prueba consistente en producir: a) Todo correo electrónico del Ing. Juan Goyco Graziani dirigido a los abogados, las partes, los ajustadores, a la compañía y a otros ingenieros referente al informe o que esté relacionado con el informe infrarrojo; b) Todo anejo que se incluya o se relacione a los correos electrónicos descubiertos; c) Todo borrador de

---

[34] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 73-78.
[35] El caso no quedó sometido hasta el 20 de marzo de 2025 que se recibió el mandato del Tribunal Supremo.
[36] Según surge del aludido dictamen, la parte apelada tenía una versión del informe de infrarrojo preparado por el ingeniero, mientras que la parte apelante tenía una versión diferente del informe.

informe preparado por el Ing. Goyco Graziani y /o sus empleados o asociados; d) Todo informe preparado por el Ing. Goyco Graziani y/o sus empleados o asociados.

El **22 de febrero de 2024**, la parte apelante presentó ante el foro primario *Moción en Cumplimiento de Orden del 20 de febrero de 2024*.[37] Afirmó que, con la aludida moción se acompañaba una declaración jurada firmada por el Ing. Goyco, así como los correos electrónicos relacionados al estudio infrarrojo.

El **26 de febrero de 2024**, durante la continuación del juicio, la parte apelada le planteó al tribunal de instancia que la parte apelante había ocultado el informe preliminar infrarrojo suscrito por el Ing. Goyco. Lo anterior, dio lugar a que la primera instancia judicial emitiera una *Resolución* mediante la cual ordenó la eliminación tanto del informe preliminar y final del Ing. Goyco, como la totalidad de su testimonio.

En desacuerdo con lo dictaminado, la parte apelante incoó ante esta Curia un recurso de *Certiorari*, el cual fue denegado por la Mayoría del Panel, con el Voto Disidente de la Juez que suscribe.

Con posterioridad, y culminado el *Juicio en su Fondo*, el 30 de mayo de 2025, el foro primario emitió la *Sentencia* apelada. Mediante el aludido dictamen, el foro *a quo* declaró *Ha Lugar* la *Demanda* instada por la apelada de epígrafe, y condenó a la parte apelante a pagar a la parte apelada las siguientes sumas de dinero: $3,818,667.62 por daños sufridos a la propiedad; $300,000.00 en concepto de honorarios legales por temeridad, y; $2,516,142.72 por costas e interés legal.

En desacuerdo con lo dictaminado, la parte apelante compareció ante este foro revisor mediante el recurso de *Apelación* que nos atiene y esgrimió cuatro señalamientos de error, a saber:

> **PRIMER ERROR:** Se excedió en su discreción el Tribunal de Primera Instancia al eliminar el testimonio de parte de la prueba pericial anunciada por la Parte Peticionaria durante el

---

[37] SUMAC Entrada Núm. 327. En la Sentencia apelada no se hace referencia a esta moción.

acto del Juicio en su Fondo, a pesar de haber recibido y admitido el mismo durante los señalamientos celebrados al amparo de la Regla 56 de las de Procedimiento Civil de 2009.

**SEGUNDO ERROR:** Se excedió y abusó de su discreción el Tribunal de Primera Instancia al determinar c[o]mo sanción al amparo de la Regla 34 de las de Procedimiento Civil de 2009 el considerar probado, sin pase de prueba, el segundo informe pericial presentado por la Parte Demandante durante la celebración del Juicio en su Fondo sin el mismo gozar de base científica alguna que lo avalara basado en una alegada expoliación de evidencia de la Parte Apelante.

**TERCER ERROR:** Abusó de discreción el Tribunal de Primera Instancia al declarar Con Lugar la demanda sin que existan hechos y prueba en el récord judicial demostrativos de lo determinado por el foro sentenciador, sobre todo en cuanto al aspecto de los daños alegadamente experimentados en la totalidad de los trece (13) techos de esta estructura.

**CUARTO ERROR:** Erró el TPI al determinar que la Parte Apelante incurrió en temeridad.

Por los fundamentos que en adelante se exponen, la Juez que suscribe disiente del curso de acción tomado por la Mayoría en este este caso.

## II

### A. *El descubrimiento de prueba y la eliminación de la prueba pericial como sanción*

Como sabemos, la Regla 23 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V R. 23, regula el descubrimiento de prueba entre las partes antes del juicio. Por su parte, la Regla 23.1 (a) de Procedimiento Civil[38] dispone sobre el alcance del descubrimiento de prueba lo siguiente:

El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, de conformidad con las disposiciones de estas reglas, será como sigue:

(a)   En general.  Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes.  No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.
. . .

---

[38] 32 LPRA Ap. V, R. 23.1.

De dicha disposición se desprende que "el alcance del descubrimiento de prueba está limitado sólo a que la información solicitada sea pertinente al asunto en controversia y no sea privilegiada". *Medina v. Merk Sharp & Dohme,* 135 DPR 716, 730-731 (1994); *General Electric v. Concessionaires Inc.,* 118 DPR 32, 38-39 (1986).

Nuestra Alta Curia ha puntualizado que, el descubrimiento de prueba cumple el propósito de: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. Véase R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal* civil, 6ta ed., San Juan, Ed. LexisNexis, 2017, págs. 333-334.

En cuanto al alcance del descubrimiento, nuestra última instancia judicial ha adoptado la política de que el mismo debe ser amplio y liberal. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 203 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 510 (2022); *McNeil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 152 (2000). De igual forma, nuestro Alto Foro ha expresado que los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Cruz Flores et al. v. Hosp. Ryder et al., supra.* Por lo tanto, al momento de limitar el descubrimiento de prueba según las Reglas de Procedimiento Civil, los tribunales deberán hacer un balance entre estos dos intereses. *Rivera y otros v. Bco. Popular, supra,* págs. 154-155; *Lluch v. España Service Sta.,* 117 DPR 729, 742-743 (1986). *Rivera et al. v. Arcos Dorados et al.*, supra, págs. 203-204.

Por otro lado, respecto al término para la utilización de los medios de descubrimiento de prueba, el profesor Hernández Colón señala lo siguiente:

**El término límite para utilizar los medios de descubrimiento de prueba se determinará en la orden de calendarización que el juez tenga a bien adoptar conforme**

**con la complejidad de las controversias y la cantidad de partes involucradas en el pleito**. Una vez las partes sometan el *Informe para el Manejo del Caso* que exige la R. 37.1, 2009, en donde detallarán toda la información y la prueba que hayan intercambiado; especificarán la que falta por intercambiar y el calendario para la utilización de los mecanismos de descubrimiento, **el juez podrá emitir una orden de calendarización en la que calendarice el descubrimiento de prueba acordado entre las partes o determinado en la Conferencia Inicial y precise el término para concluir con la etapa del descubrimiento de prueba**. (Negrilla suplida). Hernández Colón, *op. cit.*, pág. 335.

En armonía con lo antes expuesto, la Regla 37.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, provee para que el tribunal emita una orden sobre la calendarización del caso que recoja las disposiciones y acuerdos considerados en la conferencia inicial. De esta forma, la regla permite la intervención temprana del tribunal para establecer de manera clara la calendarización del caso.[39] Al mismo tiempo, la regla dispone que "[l]os términos y los señalamientos fijados en la orden de calendarización serán de estricto cumplimiento, sujeto a la sanción establecida en la Regla 37.7 de este apéndice". Regla 37.3(c) de Procedimiento Civil de 2009, *supra. Rivera et al. v. Arcos Dorados et al.*, supra, págs. 204-205.

Como vemos, la Regla 37.7 de Procedimiento Civil de 2009, 32 LPRA Ap. V, regula lo concerniente a la imposición de sanciones económicas por incumplir con las órdenes y los señalamientos relacionados al manejo del caso, sin que medie justa causa.[40] Específicamente, el texto de la regla dispone que "**[s]i una parte o su abogado o abogada** incumple con los términos y señalamientos de esta regla, o **incumple cualquier orden del**

---

[39] El tratadista Cuevas Segarra menciona lo siguiente sobre la Regla 37.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V: "Esta regla permite que el tribunal intervenga en el pleito desde una etapa inicial y establezca la calendarización del caso mediante orden al efecto, la cual se considera vital dentro del nuevo orden concebido para el manejo del caso". J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, Tomo III, pág. 1108. Véase, también, Comité Asesor Permanente de las Reglas de Procedimiento Civil, *Informe de Reglas de Procedimiento Civil*, Secretariado de la Conferencia Judicial y Notarial, Tribunal Supremo de Puerto Rico, marzo de 2008, pág. 429.

[40] Cabe destacar que nuestro ordenamiento procesal reconoce la facultad del tribunal para sancionar al abogado, a la parte o ambos en diferentes instancias. Véanse: Reglas 9.1, 9.3, 9.4, 23.1, 23.2, 34.2, 34.3, 34.4, 34.5, 34.6, 35.1, 36.7, 37.1, 37.3, 37.4, 37.7, 39.2, 39.4, 40.4, 40.10 y 44.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V. Véase, también, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 246.

**tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda**". (*Énfasis en el original*). *Íd.*

De acuerdo con este lenguaje, "[e]l juez sólo tiene discreción para considerar si las razones que brinda la parte o el abogado que incumplió son suficientes para justificar la no imposición de la sanción económica". Hernández Colón, *op. cit.,* pág. 387. **Claro está, nada impide que posteriormente se impongan sanciones más drásticas, luego de que se aperciba a la parte sobre las consecuencias del incumplimiento y se conceda un tiempo razonable para corregir la situación**. Véase J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, Tomo III, págs. 1118-1119. *Id.*

Con la aprobación de la Regla 37.7 de Procedimiento Civil de 2009, *supra*, la cual procede -en parte- de la Regla 37.3 de Procedimiento Civil de 1979, 32 LPRA Ap. III (ed. 1983), se eliminó la sanción en primera instancia de la desestimación de la demanda,[41] ya que se encuentra en conflicto con la Regla 39.2(a) de Procedimiento Civil de 2009, *supra.*[42] La Regla 37.7 de Procedimiento Civil de 2009, *supra*, que además es equivalente -en parte- a la Regla 16(f) de las Reglas de Procedimiento Civil Federal, Fed. R. Civ. P. 16(f), 28 USCA, también difiere de esta última en que no contiene una referencia expresa a la regla de sanciones del descubrimiento de prueba,

---

[41] Cuevas Segarra, *op. cit.,* pág. 1118. Véase, también, Comité Asesor Permanente de las Reglas de Procedimiento Civil, *supra*, pág. 443.

[42] La Regla 39.2(a) de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone lo siguiente: "(a) Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra esta o la eliminación de las alegaciones, según corresponda.

Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término".

que incluye la limitación de la presentación de prueba en el juicio, "**pues contempla la sanción económica como el disuasivo principal con el incumplimiento con esta Regla 37 que requiere el cumplimiento cabal con los términos y señalamientos de esta regla y con la orden de manejo del caso para el buen funcionamiento**". (Negrilla suplida). Cuevas Segarra, *op. cit.*, págs. 1119-1120.

A su vez, la Regla 34 de Procedimiento Civil[43] establece el procedimiento que las partes y el tribunal deben seguir ante una controversia relacionada al descubrimiento de prueba[44] y postula las consecuencias para la parte que se rehúsa a cumplir con una orden del tribunal de instancia al respecto. La negativa de obedecer una orden para descubrir prueba está regulada por la Regla 34.3(b)(3) de Procedimiento Civil y, en lo pertinente, establece lo siguiente:

(a)    Desacato.[...]

(b)    Otras consecuencias. -Si una parte o un(a) funcionario(a) o agente administrador(a) de una parte, o una persona designada para testificar a su nombre según disponen las Reglas 27.6 ó 28 de este apéndice, deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba, incluyendo una orden bajo las Reglas 32 y 34.2 de este apéndice, el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas; entre ellas las siguientes:

(1)    [...]

(2)    [...]

(3)    Una orden para eliminar alegaciones o parte de ellas, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, o para desestimar el pleito o procedimiento o cualquier parte de ellos, o para dictar una sentencia en rebeldía contra la parte que incumpla.[45]

---

[43] 32 LPRA Ap. V.

[44] Según la Regla 34.1 de Procedimiento Civil el tribunal podrá ordenar que una parte descubra prueba si la parte interesada presenta una moción en la que certifique con particularidad que realizó los esfuerzos razonables, con prontitud y de buena fe para resolver los asuntos que planteó en el escrito y que, a pesar de ello, no alcanzó resultado alguno con la representación legal de la parte adversa. Si la parte promovente cumplió, de acuerdo con la Regla 34.2 de Procedimiento Civil esta podrá requerirle al foro primario que, a su discreción, dicte una orden para obligar a la parte compelida a descubrir lo solicitado. Véase, Regla 34.1 y 34.2 de Procedimiento Civil, 32 LPRA Ap. V.

[45] Regla 34.3(b)(3) de Procedimiento Civil, 32 LPRA AP. V. (Énfasis suplido).

A través del inciso (b)(3), el tribunal puede sancionar con la eliminación total o parcial de las alegaciones. Sin embargo, igual que la desestimación de la demanda, la eliminación de las alegaciones y la rebeldía son el castigo más severo para la parte que declina obedecer una orden para descubrir prueba.[46] La imposición de estas sanciones "siempre se debe[n] dar dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción".[47]

Por tal razón, antes de ordenar la desestimación del pleito o la eliminación de las alegaciones, el tribunal tiene que ejecutar el orden de prelación que establece la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V. Primero, el tribunal tiene que apercibir de la situación a la representación legal de la parte y concederle la oportunidad para responder. Si el representante legal no responde al apercibimiento, el tribunal le impondrá sanciones y le notificará directamente a la parte sobre el asunto.[48] Una vez que la parte haya sido informada o apercibida de la situación y de las consecuencias que el incumplimiento conlleva, deberá corregirla dentro del término que el tribunal de instancia le conceda. El plazo conferido será razonable y, salvo que las circunstancias del caso lo justifiquen, no será menor de treinta días. Si la parte no toma acción correctiva al respecto "nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas."[49] Cumplido este trámite, el tribunal se encontrará en posición para imponer la sanción que corresponda.

Particularmente atinente a la controversia que nos ocupa, la Regla 702 de las Reglas de Evidencia, 32 LPRA Ap. VI, regula lo referente al

---

[46] *HRS Erase, Inc. v. Centro Médico del Turabo, Inc.,* supra, pág. 700; *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1050 (1993).

[47] *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 590 (2011).

[48] *HRS Erase, Inc. v. CMT*, supra.

[49] *HRS Erase, Inc. v. CMT, Inc.,* supra, 702; *Maldonado v. Srio. de Rec. Naturales*, supra, pág. 498; *Echevarría Jiménez v. Sucn. Pérez Meri,* 123 DPR 664, 673–674 (1989); *Acevedo v. Compañía Telefónica de P.R.*, 102 DPR 787, 791 (1974); *Arce v. Club Gallístico de San Juan,* 105 DPR 305 (1976); *Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 822-823 (1980).

testimonio pericial y dispone que cuando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como perita, conforme a la Regla 703, podrá testificar en forma de opiniones o de otra manera.

En el caso *S.L.G Font Bardón v. Mini-Warehouse*, 179 DPR 322, 338 (2010), nuestra más alta instancia judicial definió al perito como "una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador". Black's Law Dictionary, 8va ed., Minnesota, Ed. Thomson West, 2004, pág. 619. Sobre este particular, el Tribunal Supremo de Puerto Rico añadió que el perito es "la persona entendida, el individuo competente, idóneo, por tener unas determinadas aptitudes y conocimientos, por poseer una adecuada capacidad". En el antes citado caso, el Tribunal Supremo de Puerto Rico hizo una distinción entre el perito consultor y el perito testigo. Al respecto indicó que: "cuando un perito es consultado por una parte, pero no se espera que sea llamado a testificar en el juicio, se le conoce como perito consultor." Black's Law Dictionary, op. cit., pág. 619. Si, por el contrario, el perito ha sido identificado como un testigo potencial, entonces será un perito testigo. *S.L.G Font Bardón v. Mini-Warehouse*, supra, págs. 338-339. Cabe destacar que, en el caso de autos, estamos ante un perito testigo.

Por lo general, los peritos consultores y los peritos testigos reciben un trato distinto durante el descubrimiento de prueba. Tanto las Reglas de Procedimiento Civil de Puerto Rico, *supra*, como las Reglas de Procedimiento Civil Federal, 28 U.S.C.A. R. 1 *et seq.*, **reconocen que una parte puede requerirle a otra que provea cierta información sobre sus peritos testigos que no tiene que proveer con relación a los peritos consultores.** *Id.*, pág. 339.

**En nuestra jurisdicción, se le puede exigir a la otra parte que exprese la materia sobre la cual va a declarar el perito testigo, y que entregue un resumen de sus opiniones y una breve expresión de las teorías, hechos o argumentos que sostienen las mismas.** Regla 23.1 de Procedimiento Civil, [32 LPRA Ap. V, R. 23.1].[50] *Id.*, pág. 339.

En otras palabras, mediante el mecanismo del descubrimiento de prueba pericial, una parte puede requerirle a otra el nombre y dirección de los peritos consultados y de los que intente presentar en el juicio, la materia sobre la cual van a declarar, un resumen de sus opiniones y una breve expresión de las teorías que sostienen su opinión[51]. Las Reglas de Procedimiento Civil de 2009, no establecen un término final específico para concluir el descubrimiento de prueba, porque ese período dependerá de las características particulares del caso[52].

Nuestro Máximo Foro ha dejado meridianamente claro que, debemos considerar, conjuntamente, que **la medida severa de excluir del juicio el testimonio de un testigo crucial [o de un perito esencial], que es análoga a la medida extrema de la desestimación, sólo debe usarse en circunstancias excepcionales** […]. *Valentín v. Mun. de Añasco*, 145 DPR 887, 895 (1998). En el citado caso, la Alta Curia indicó que **tales sanciones drásticas no son favorecidas judicialmente**. *Íd.* **Con este juicioso proceder, promovemos los valores superiores de la búsqueda de la**

---

[50] La Regla 23.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1 regula lo relacionado al alcance del descubrimiento de prueba en materia civil. Dicha regla dispone en lo aquí pertinente que:

   El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:

   (c) *Persona Perita.* -El descubrimiento de prueba pericial podrá llevarse a cabo como sigue:

      (1) Una parte podrá, a través de interrogatorios, requerir a cualquier otra parte que suministre el nombre y la dirección de las personas peritas que haya consultado y de las que intente presentar en el juicio. Respecto a estos últimos, podrá requerirse a la parte que exprese la materia sobre la cual la persona perita se propone declarar, así como un resumen de sus opiniones y una breve expresión de las teorías, los hechos o los argumentos que sostienen las opiniones. A solicitud de parte, el tribunal podrá ordenar el descubrimiento de prueba pericial por cualquier otro medio, sujeto a aquellas condiciones o limitaciones que estime razonables.

[51] 32 LPRA Ap. V., R. 23.1 (c).
[52] J Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra. ed., Colombia, 2012, pág. 170.

**verdad y la justicia en los procesos adjudicativos.** *Íd.,* pág. 897. **De igual forma, fomentamos la política judicial de que los casos sean ventilados en los méritos.** *Íd.* Véase, también, Cuevas Segarra, *op. cit.*, pág. 1118. *Rivera et al. v. Arcos Dorados et al.*, supra, págs. 206-207. (*Énfasis suplido*).

### C. *Aplicación de la doctrina de expoliación de la evidencia*

De entrada, es menester destacar que, en nuestro ordenamiento procesal estatal *no se ha adoptado* la doctrina de **expoliación de la evidencia**.

En la esfera federal, se entiende por expoliación de la evidencia como el acto de obstruir o perjudicar la búsqueda de la verdad e incluye, entre otros, declarar falsamente, fabricar o esconder evidencia y destruir o alterar evidencia pertinente.[53] Dicha norma se fundamenta, eminentemente, en la responsabilidad de las partes litigantes de preservar aquella evidencia relevante en un litigio futuro, evitando su pérdida o destrucción.[54]

### D. Regla 44.1 de las Reglas de Procedimiento Civil

Las costas y honorarios de abogado se encuentran regulados por la Regla 44.1 de Procedimiento Civil. En su inciso (a) esta dispone que, las costas serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, con excepción de aquellos casos en los que se disponga lo contrario por la ley o las Reglas de Procedimiento Civil. Dicho estatuto también dispone que, las costas que el tribunal podrá conceder "son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra". Regla 44.1 (a) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1 (a).

En cuanto a cómo se concederán, la Regla 44.1(b) establece:

> La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de

---

[53] Véase, V. Neptune Rivera, *Los Retos de la Evidencia Electrónica*, 76 Rev. Jur. UPR 337, 341-243 (2007).

[54] *Pérez v. Hyundai Motors Co.*, 440 F. Supp.2nd 57 (2006).

todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento de parte o mediante certificación del abogado o abogada y consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de certiorari. De haberse instado un recurso contra la sentencia, la revisión de la resolución sobre costas deberá consolidarse con dicho recurso.[55]

La precitada disposición tiene una función reparadora, pues permite resarcir a la parte prevaleciente en el pleito por medio del reembolso de los gastos necesarios y razonables en los que tuvo que incurrir para que su teoría prevaleciera. *Maderas Tratadas v. Sun Alliance, et al.*, 185 DPR 880, 934 (2012); *ELA v. El Ojo de Agua Development*, 205 DPR 502, 527 (2020); *Rosario Domínguez v. ELA*, 198 DPR 197, 211 (2020). Nuestra Máxima Curia ha dispuesto que, una vez la parte prevaleciente reclama su pago, la imposición de costas a la parte perdidosa es mandatoria. *Íd.*

No obstante, lo anterior no implica que el pago de las costas es automático, puesto que es necesario que la parte prevaleciente cumpla con el procedimiento dispuesto en la Regla 44.1 (b) de Procedimiento Civil, *supra.* *Íd.*; *ELA v. El Ojo de Agua Development*, supra, pág. 528. Además, se debe presentar oportunamente un memorando de costas en el que se precisen los gastos incurridos. *Rosario Domínguez v. ELA*, supra, pág. 212. Una vez sometido oportunamente a la consideración del tribunal, estos tienen amplia discreción para evaluar la razonabilidad y determinar la

---

[55] Regla 44.1 (b) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1 (b).

necesidad de los gastos detallados. *Maderas Tratadas v. Sun Alliance, et al.*, supra, pág. 935.

Cónsono con lo anterior, el Tribunal Supremo ha reiterado que el término de diez días para presentar el memorando de costas es jurisdiccional. *Íd.*, pág. 213. Por ende, el incumplimiento, o el cumplimiento tardío con esta regla, priva al tribunal de la autoridad para atender y conceder las costas. *Íd.*

Por otro lado, la concesión de honorarios de abogado está regulada por la Regla 44.1 (d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1 (d). La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); *SLG González-Figueroa v. SLG et al.*, 210 DPR 138 (2022).

De esta manera, la imposición o concesión de honorarios de abogado no procede en todos los casos. Depende, pues, de la determinación discrecional que haga el tribunal en torno a si la parte perdidosa o su abogado, actuaron con temeridad o frivolidad, o de la existencia de una ley especial que ordene la imposición de los honorarios. *Íd.* págs. 148-149; *Ortiz Valle v. Panadería Ricomini*, 210 DPR 831, 839-840 (2022). Nuestro Alto Foro ha puntualizado que: "[s]in duda, para reclamar honorarios de abogado y los intereses presentencia *es imprescindible* que se haya actuado con temeridad durante el trámite judicial". *SLG González-Figueroa v. SLG et al.*, supra, pág. 148.

La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *SLG González-Figueroa v. SLG et al.,* supra, pág. 148; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de

la justicia." *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001) citando a *Elba A.B.M. v. U.P.R.*, 125 PR 294, 329 (1990).

Por otro lado, la frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna." *Depto. Rec. v. Asoc. Rec. Round Hill,* 149 DPR 91, 100 (1999). Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo. *Íd.*

En Feliciano *Polanco v. Feliciano González,* 47 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico indicó que "[a] modo de ejemplo, constituyen actos temerarios los siguientes:

> [c]uando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto."

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149; *Fernández v. San Juan Co.*, Inc., 118 DPR 713, 718 (1987).

Además, la imposición de honorarios de abogado, tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987). Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es la mejor

arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios. *SLG González-Figueroa v. SLG et al.*, supra, pág. 149.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, pág. 150. Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González, supra*, págs. 728-729.

Ahora bien, una vez el tribunal determina que se incurrió en temeridad, está obligado a imponer el pago de los honorarios de abogado a favor de la parte que prevaleció en el pleito. *PR Fast Ferries et al. v. AAPP*, 213 DPR 103, 115 (2023). No obstante, el tribunal no está obligado a realizar la determinación de temeridad en términos expresos. *SLG González-Figueroa v. SLG et al.*, supra, en la pág. 148, citando a *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702-703 (1999). El Alto Foro ha resuelto que: "[e]n ausencia de una conclusión expresa a esos efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada". *Rivera v. Tiendas Pitusa, Inc.,* 148 DPR 695 (1999). Ver también *Siaca v. Bahía Beach Resort*, 194 DPR 559, 589, esc. 75 (2016); *Ramos v. Moure et al.,* 150 DPR 685, 691, esc. 9 (2000).[56]

---

[56] En el caso de *Ramos*, el Alto Foro expresó, con respecto a uno de los señalamientos ante su consideración, que: "[e]ste tercer error carece de mérito ya que **reiteradamente hemos resuelto que el tribunal puede imponer honorarios sin la necesidad de mencionar expresamente la existencia de temeridad**. Basta con imponer honorarios para determinar temeridad". (Énfasis suplido).

### *E. Deferencia al foro primario*

Según es sabido, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219, (2021); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". **Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho".** (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

Es correcto que los tribunales de instancia poseen el poder inherente para vindicar la majestad de la ley y para hacer efectiva su jurisdicción, pronunciamientos y órdenes. El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. Es por ello que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la

forma y manera que su buen juicio les indique. (Citas omitidas). *In re Collazo I,* 159 DPR 141, 150 (2003). Ahora bien, el Tribunal Supremo de Puerto Rico ha indicado que no intervendrá con dicha facultad de los tribunales de instancia, "excepto cuando sea absolutamente necesario con el propósito de evitar una flagrante injusticia". *Pueblo v. Vega, Jiménez,* 121 DPR 282, 287 (1988).

**III**

En apretada síntesis, corresponde resolver si, se excedió en su discreción el Tribunal de Primera Instancia al eliminar durante el acto del Juicio en su Fondo, el testimonio de parte de la prueba pericial anunciada por la parte apelante, a pesar de haber recibido y admitido el mismo durante los señalamientos celebrados al amparo de la Regla 56 de las de Procedimiento Civil de 2009; y al imponer como sanción, al amparo de la Regla 34 de las de Procedimiento Civil, *supra*, el considerar probado, sin pase de prueba, el segundo informe pericial presentado por la parte apelada durante la celebración del Juicio en su Fondo sin el mismo gozar de base científica alguna que lo avalara basado en una alegada expoliación de evidencia de la parte apelante.

Asimismo, procede determinar si, abusó de discreción la primera instancia judicial al declarar Con Lugar la demanda sin que existan hechos y prueba en el récord judicial demostrativos de lo determinado por el foro sentenciador, sobre todo en cuanto al aspecto de los daños alegadamente experimentados en la totalidad de los trece (13) techos de esta estructura y, al determinar que la parte apelante incurrió en temeridad. Veamos.

Tal cual fue adelantado, la Juez que suscribe se reitera en que, en el presente caso, el foro primario incurrió en error al eliminar la prueba pericial. Dicho *error de fondo*, redundó en que, asimismo, errara al emitir la Sentencia imponiendo responsabilidad sin darle a la parte apelante una oportunidad razonable de defenderse y al imponerle temeridad.

Conforme surge del tracto procesal del caso de marras, durante el litigio, las partes estuvieron envueltas activamente en el descubrimiento de prueba. Es meritorio puntualizar que, obran en autos sendos escritos que evidencian que el ingeniero Goyco, perito de la parte apelante, fue depuesto y que el informe infrarrojo fue producido a la parte apelada con suficiente antelación al juicio.

Ahora bien, ciertamente, mientras se ventilaba el juicio surgió una discrepancia entre las partes sobre el contenido del informe pericial del ingeniero Goyco al que aludió el representante legal de la parte apelante versus el informe que había sido producido a la parte apelada. Esta situación provocó que la parte apelada persuadiera al foro primario de que la parte apelante había incurrido en *expoliación de la evidencia,* lo que conllevaba las más severas sanciones como la eliminación de la prueba pericial, así como de las alegaciones.

Como fue adelantado, esta Juez no puede avalar el curso de acción tomado por el foro *a quo*, por entender que, tal actuación bajo las circunstancias del presente caso, constituyen un abuso de discreción que no está permitido por nuestro estado de derecho.

Nuestro Tribunal Supremo reiteradamente ha reconocido la facultad de los tribunales para hacer valer sus órdenes y vindicar su autoridad. Al así hacerlo, ha expresado lo siguiente:

> A lo largo de la existencia del ordenamiento procesal civil en nuestra jurisdicción, los tribunales han estado facultados para imponer una serie de sanciones contra aquella parte que incumpla una orden del tribunal.[57] Las sanciones son un mecanismo procesal que permite a los tribunales imponer su jurisdicción, autoridad y pronunciamientos.[58] Estas tienen el objetivo de incitar a una parte a que responda con prontitud con el fin de alcanzar la solución justa, rápida y económica de los casos y que las controversias se puedan atender en los méritos.[59] En ese sentido, el poder inherente de los tribunales para imponer sanciones permite la flexibilidad para escoger la

---

[57] *HRS Erase, Inc. v. Centro Médico del Turabo, Inc.,* 205 DPR 689, 699 (2020).

[58] *In re Collazo I,* 159 DPR 141, 150 (2003); *E.L.A. v. Asociación de Auditores,* 147 DPR 669, 681(1999); *Pérez Pascual v. Vega Rodríguez,* 124 DPR 529, 535 (1989); *Sterzinger v. Ramírez,* 116 DPR 762, 787 (1985).

[59] *Valentín v. Mun. de Añasco,* 145 DPR 887, 896 (1998) ("Sanctions are intended to prompt a party to respond"); *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1051-1052 (1993).

sanción y ajustarla a los hechos, a la causa de acción de que se trate y al propósito que se persigue.[60] *Mitsubishi Motors v. Lunor y otros*, 212 DPR 807, 818 (2023).

Ahora bien, la Alta Curia ha dejado meridianamente claro que si bien, a través del inciso (b)(3) de la Regla 34 de Procedimiento Civil, *supra*, el tribunal puede sancionar con la eliminación total o parcial de las alegaciones, sin embargo, igual que la desestimación de la demanda, la eliminación de las alegaciones y la rebeldía son el castigo más severo para la parte que declina obedecer una orden para descubrir prueba. En vista de lo anterior, **la imposición de estas sanciones "siempre se debe[n] dar dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción"**.[61]

Luego de una revisión sosegada y desapasionada del expediente de autos, esta Juez considera que, si bien mediaron ciertas discrepancias en torno al descubrimiento de prueba y que no ha habido un cumplimiento cabal con el descubrimiento de prueba ordenado, no existe base en el expediente para concluir que estemos ante un caso de un patente incumplimiento que conlleve las sanciones tan drásticas impuestas por el foro *a quo*. Mucho menos, sin haber dado cumplimiento previo al procedimiento estatuido por la Regla 34 de Procedimiento Civil, *supra*.

Esta Juez no alberga duda alguna que el foro primario se excedió de su discreción al eliminarle a la parte apelante la prueba pericial que esta se proponía utilizar, sin que mediara una justificación real para ello y sin haber impuesto antes sanciones o medidas menos drásticas como exige nuestro ordenamiento procesal.

La aplicación de la doctrina de *expoliación de la evidencia* sin haber sido reconocida en nuestra jurisdiccion y sin base razonable para ello, constituye, a juicio de esta Juez, un claro abuso de discreción, que acarrea

---

[60] *Pagán Rodríguez v. Rivera Schatz,* 206 DPR 277, 288 (2021); R. Hernández Colón, *Práctica jurídica de Puerto Rico, Derecho procesal civil,* 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 328.

[61] *Id*, pág. págs. 819-820.

unas consecuencias nefastas para la parte apelante.  El imponerle a la parte apelante la drástica sanción de la eliminación de la evidencia pericial, tiene el efecto neto de privar injustificadamente a dicha parte de su derecho a un debido proceso.

Peor aún, el foro primario, no solo le eliminó la prueba pericial a la parte apelante, dejándola así, en un estado de indefensión, sino que, para todos los fines prácticos, eximió a la parte apelada de su carga probatoria, no solo respecto a la extensión y cuantía de los daños, sino a la procedencia y relación causal de los mismos.

Asimismo, la comisión de los errores antes puntualizados, desencadenaron en la comisión de errores adicionales, a saber, la imposición desmedida de honorarios por temeridad, así como de las costas, gastos e intereses. Si bien, la imposición de temeridad es un ejercicio discrecional, dicha discreción tiene que estar enmarcada en la razonabilidad.  Ante las circunstancias que nos ocupan, este no es el caso. Tal y como fue esbozado previamente, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".  **Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho".**

Por todo lo anteriormente expresado, esta Juez respetuosamente disiente de la determinación tomada por la que, la Mayoría de este Panel no hace otra cosa, sino perpetuar una injusticia.  Ello, en total desapego de lo resuelto por nuestra última instancia judicial, respecto a la controversia que nos ha sido planteada.  Por tal razón, esta Juez disiente.

**GLORIA L. LEBRÓN NIEVES**
Juez de Apelaciones